OPINION OF THE COURT
Myrna Martinez-Perez, J.
By petition filed October 30, 1991, the respondent is charged with acts which if committed by an adult constitute the crimes of criminal possession of a weapon in the third degree (Penal Law § 265.02 [3]), criminal possession of a weapon in the fourth degree (Penal Law § 265.01 [1]), and unlawful possession of weapons by persons under 16 (Penal Law § 265.05).
In this delinquency proceeding, the court is called upon to determine whether, as a matter of law, the presentment agency has established probable cause to arrest.
The respondent herein, complaining of being aggrieved by an unlawful search and seizure, in violation of his Fourth Amendment rights, has moved to suppress the gun recovered. On a motion to suppress physical evidence it is the respondent who bears the burden of proof to show the illegality of police conduct by a preponderance of the evidence. The presentment agency however bears the burden of going forward in the first instance. (People v Whitehurst, 25 NY2d 389, 391 [1969].)
Respondent has likewise moved to suppress certain statements allegedly made to police as having been obtained in violation of his Fifth Amendment right. Hence, combined Mapp/Huntley/Dunaway hearings were conducted by this court.
On October 6, 1991, Officer Finn and Officer Kelly were on duty in plain clothes, in an unmarked car, investigating a crime, unrelated to the present matter. Officer Kelly advised Officer Finn that she believed respondent had a gun, and that she saw the outline of a gun in respondent’s rear pocket. She identified the respondent as the last one in a group of three *265 youths who had walked alongside their vehicle. The police pursued the respondent in their car. They approached the respondent with guns drawn, and shouted "Police, Stop”. Simultaneous to the police approach, respondent hurled an object over a fence which was later found to be a defaced gun.
At the Mapp hearing, only Officer Finn testified. He acknowledged that he could not see the respondent from below the waist and that he made no personal observation of any criminal activity prior to taking police action.
Respondent argues that without the requisite personal knowledge, Officer Finn lacked reasonable suspicion to believe that respondent was engaged in criminal activity, that the recovery of the gun was preceded by an unlawful seizure and should be suppressed as fruit of unlawful police conduct.
Respondent characterizes the information supplied to Officer Finn as a "tip” which necessitates the production of the sending officer at the Mapp hearing.
Respondent further argues that pursuant to the Court of Appeals ruling in People v Havelka (45 NY2d 636 [1978]) and People v Lypka (36 NY2d 210 [1975]), the reliability of the information provided to Officer Finn has not been demonstrated, and thus requires that the motion to suppress be granted.
However, the factual circumstances of the case at bar are clearly distinguishable from the Havelka/Lypka holding, relied upon by respondent. In contrast to those cases, the information provided to the arresting officer was from a known source of known reliability. (People v Petralia, 62 NY2d 47 [1984].) The evidence submitted to the court shows that Officer Finn relied upon the personal observation of his partner Officer Kelly who observed the outline of a gun in respondent’s rear pocket as respondent walked alongside the police vehicle. She pointed out the respondent as the last one in a group of three youths. Officers Kelly and Finn were working together as a team and were sitting in the same patrol car, Officer Finn behind the driver’s wheel and Officer Kelly in the passenger seat.
Based upon Officer Kelly’s observation, both police officers followed the respondent in their car, both exited their vehicle at the same time and both approached the respondent. Except for a few seconds, Officer Finn did not lose sight of these individuals.
The observations of Officer Kelly communicated to Officer *266 Finn provided reasonable suspicion founded upon specific articulated facts that criminal activity was afoot. Based upon such information, the police were justified in their approach and attempt to stop respondent for inquiry. (People v De Bour, 40 NY2d 210 [1976].)
A police officer is authorized to stop and detain a person if the officer has reasonable suspicion that the person is engaged in criminal activity, and to frisk the person if the officer reasonably suspects a danger of physical injury or that the person is armed and dangerous.* (CPL 140.50 [1], [3]; People v De Bour, 40 NY2d 210, supra.)
Although the observations of Officer Kelly, if credited, provide only reasonable suspicion, which thereafter rose to the level of probable cause when Officer Finn recovered the gun, the court does not find that a different analysis or holding is warranted.
The issue remains the same, whether at a suppression hearing, the presentment agency must produce all its witnesses to establish the legality of police conduct by a preponderance of the evidence. The presentment agency is not obligated to present the testimony of the “sending officer” at a suppression hearing to establish reasonable suspicion to forcibly stop and detain a respondent.
This is especially true when there is direct, face-to-face communication and both officers are engaged in a common investigation. Observations of fellow officers of the government engaged in a common investigation are plainly a reliable basis to determine whether the presentment agency has met its burden of coming forward with evidence establishing probable cause to arrest. (United States v Ventresca, 380 US 102, 111 [1965]; People v Petralia, 62 NY2d 47, 52, supra.) There is a significant difference in the proof of guilt at trial and probable cause as well as a difference in the quantum and *267 modes of proof required to establish each. The hearsay information provided by Officer Kelly is admissible so long as there is a substantial basis for crediting the hearsay presented. (Jones v United States, 362 US 257 [1960].)
Respondent has urged that the Petralia rule should be limited to narcotic cases involving undercover agents, and that the policy considerations of maintaining the anonymity and effectiveness of undercover officers is not present in this case, and should not be applied.
The Second Department, however, has upheld and extended the Petralia rule to instances that do not involve "buy and bust” situations and which involve police communication that are less direct than face-to-face communication. (See, People v Rivera, 170 AD2d 625 [2d Dept 1991] [radio call to arresting officer resulting in defendant’s arrest for assault].) The weight of case law in the Second Department does not support the limited application of Petralia (supra), espoused by respondent.
Assuming arguendo that the police lacked probable cause, respondent’s Fourth Amendment claim of an illegal seizure was recently decided by the United States Supreme Court. Under factual circumstances similar to the case at bar, the United States Supreme Court defined the limitation of an "illegal seizure” by police. (California v Hodari D., 499 US —, 111 S Ct 1547 [1991].) In Hodari D., the State conceded that the police lacked probable cause to pursue the juvenile defendant, but contended that Hodari D. had abandoned the drugs prior to being seized by the police. Hodari D., who was looking back and running away from several police officers, did not see the police officer who had circled around to intercept him. When he saw the officer, Hodari D. hurled a small package and the police officer then tackled, and handcuffed him, and then went to retrieve the object discarded which turned out to be crack cocaine. All of this occurred within a short time span.
The Supreme Court declined to stretch the application of Fourth Amendment beyond its words and beyond the meaning of arrest. (Supra, 499 US, at —, 111 S Ct, at 1551.) A "seizure of a person” requires either the application of physical force however slight, or where that is absent, submission to an officer’s "show of authority” to restrain the subject’s liberty. (Supra, 499 US, at —, 111 S Ct, at 1550.) The Supreme Court held that since the police did not physically restrain Hodari until after he had discarded the drugs, he was not seized within the meaning of the Fourth Amendment.
*268 As in Hodari D. (supra), the respondent here, whose back was toward the police officers, did not see Officer Finn until the officer was almost upon him. Just moments before, he threw an object over a three-foot wrought iron fence. Officer Finn detained the respondent against a wall and then went to retrieve the object which turned out to be a defaced gun. Respondent was then placed under arrest. Since the police did not physically detain the respondent until after he had thrown the gun, respondent abandoned the gun, and thus, the gun is not the fruit of an illegal seizure.
During the Huntley hearing, the respondent contended that statements made should be suppressed as the fruit of a poisonous tree stemming from the initial illegal police conduct. Respondent also questioned the existence of the statements since Officer Finn did not record either statement made by respondent.
Officer Finn testified that respondent’s statement occurred while he and Officer Kelly held a conversation by the open rear door of the car where the respondent was seated. Respondent contends that Officer Finn’s statement to Officer Kelly regarding a missing clip to the gun was calculated to elicit a response from the respondent without advising respondent of his Miranda warnings.
The court disagrees with respondent’s contentions. The officers’ conversation regarding the clip was held between one another to communicate what their next course of action would be. There was no direct statement made between either officer to the respondent. Respondent’s statements were spontaneous and were unsolicited by the officers. Therefore, the court holds that the statements made by the respondent were made voluntarily and are not suppressible.
In conclusion, respondent’s motion to suppress the gun is denied in its entirety. First, under the United States Supreme Court case of California v Hodari D. (499 US —, 111 S Ct 1547, supra), the court finds that respondent was not seized until after he discarded the gun. Consequently, the gun is not the fruit of illegal seizure but instead constitutes "abandoned” property to which Fourth Amendment protections do not apply. Second, the court finds that under decisional case law *269 of State constitutional claims, the officer’s investigative pursuit of respondent was founded on reasonable suspicion that criminal activity was afoot. Third, the court finds that respondent’s statements were voluntary, and not in violation of respondent’s privilege against self-incrimination.

 CPL 140.50 reads, in relevant part:
«1 * * * [A] police officer may stop a person in a public place * * * when he reasonably suspects that such person is committing * * * either (a) a felony or (b) a misdemeanor * * * and may demand of him his name, address and explanation of his conduct. * * *
"3. When upon stopping a person under circumstances prescribed in subdivision * * * one * * * a police officer * * * reasonably suspects that he is in danger of physical injury, he may search such person for a deadly weapon or any instrument, article or substance readily capable of causing serious physical injury and of a sort not ordinarily carried in public places by law abiding persons.”